Edna FRANZA and Robert
Brache, Plaintiffs,

v.

Hugh L. CAREY, as Governor of New York State, Robert Abrams, as Attorney General of New York State, and Richard Berman, as Director of New York State Health Systems Management, Defendants.

No. 80 Civ. 4311 (JMC).

United States District Court,
S. D. New York.

July 17, 1981.

---

Gerald B. Lefcourt, New York City (Richard Ware Levitt and Randye S. Retkin, New York City, of counsel), for plaintiffs.

Robert Abrams, Atty. Gen. of N. Y., New York City (Patricia C. Armstrong and Judith T. Kramer, Asst. Attys. Gen., New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge:

After consolidating a hearing on plaintiffs' motion for a preliminary injunction with a trial on the merits of the complaint, the Court finds for plaintiffs. New York State's drug paraphernalia law, Article 39 of the General Business Law §§ 850–853 (McKinney Supp. 1980–1981) [the "Statute" or "Article 39"], is hereby declared to be impermissibly vague and its enforcement is permanently enjoined.

## FACTS

This action presents the latest judicial challenge to the constitutionality of legislation adapted from the Drug Enforcement Administration's ["DEA"] Model State Drug Paraphernalia Act [the "Model Act"]. Plaintiffs Robert Brache and Edna Franza,[1] owners of retail establishments selling novelty items and smoking accessories, seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, alleging that the Statute[2] suffers from six constitutional infirmi-

1. On July 29, 1980, this action was commenced by Mark Benowitz and Jerry Schneiderman, both owners of smoking accessories and novelty stores located in New York City. On that date, Judge Broderick granted plaintiffs an order temporarily restraining the defendants from enforcing the Statute. By consent of all parties, Brache and Franza were joined as plaintiffs on October 14, 1980. In late July, Brache and Franza commenced an action in this Court, which was assigned to Judge Haight, challenging the constitutionality of the Westchester County drug paraphernalia ordinance. See Brache v. County of Westchester, 507 F.Supp. 566 (S.D.N.Y.1981). Judge Haight denied plaintiffs' motion to consolidate the action pending before him with the instant action and scheduled the trial of the Westchester action for some time in September. Meanwhile, Benowitz and Schneiderman, who were represented by the same counsel as Brache and Franza, moved to enjoin preliminary enforcement of the Statute and defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). On September 5, 1980, the Court denied defendants' motion and informed the parties that it intended to consolidate the hearing on plaintiffs' motion for a preliminary injunction with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). Thereafter, the parties agreed to maintain the status quo pending the Court's decision.

Following the joinder of Brache and Franza, Schneiderman and Benowitz moved to be dropped as plaintiffs. The Court granted plain-

tiffs' motion over defendants' objections on the condition that Schneiderman and Benowitz would be liable for costs incurred by defendants in preparing the action against them. See Endorsement (filed Nov. 12, 1980). Thereafter, the parties agreed, in the interest of avoiding the duplicate production of evidence, that specified testimony and exhibits in evidence in Brache v. County of Westchester, would be received in evidence during the trial of this action. See Stipulation and Order (filed Dec. 2, 1980). The trial was held December 10–12, 1980, and thereafter the parties submitted post-trial memoranda of law. The Court has also considered memoranda submitted by the City of New York and the New York Civil Liberties Union as amicus curiae. See Stipulations (filed Aug. 22, 1980 and Sept. 3, 1980).

After trial, it was discovered that certain exhibits that the parties had agreed the Court would consider were missing. These exhibits are Plaintiffs' Exhibits F 1–6, G 1–3, I, J 1–3, M 1–3, O 1, P 1–3, Q 1–2, S 1–3, T, V 1, W 1–7 and 9–17, X 1–4, Y 1–6 and EG 20. The parties have agreed that rather than submitting duplicate exhibits the Court will not consider testimony relating to these particular items.

2. On June 30, 1980, Governor Carey signed Article 39 into law, to become effective July 30, 1980. The Statute provides:

§ 850. *Definitions*

As used in this article, unless the context clearly requires otherwise, the following words or terms shall have the following meanings:

ties. The defendants are Hugh L. Carey, as Governor of the State of New York, Robert Abrams, as Attorney General of the State of New York, and Richard Berman, as Director of New York State Health Systems Management.[3]

*The Model Act*

The DEA published the Model Act in August 1979 as a proposed amendment to the Uniform Controlled Substances Act. Prior to that time, a number of state and local governments enacted legislation that attempted to prohibit the sale and possession of drug paraphernalia due to the rapid growth of an industry which many perceived to condone and glamorize illegal drug use, especially among adolescents.[4] The Model Act is divided into four articles.[5] The first article, which contains two subsec-

1. "Controlled substance" shall have the same meaning as defined in section three thousand three hundred two of the public health law.

2. "Drug-related paraphernalia" consists of the following objects used for the following purposes:

(a) Kits, used or designed for the purpose of planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(b) Kits, used or designed for the purpose of manufacturing, compounding, converting, producing or preparing controlled substances;

(c) Isomerization devices, used or designed for the purpose of increasing the potency of any species of plant which is a controlled substance;

(d) Scales and balances, used or designed for the purpose of weighing or measuring controlled substances;

(e) Diluents and adulterants, including but not limited to quinine hydrochloride, mannitol, mannite, dextrose and lactose, used or designed for the purpose of cutting controlled substances;

(f) Separation gins, used or designed for the purpose of removing twigs and seeds in order to clean or refine marihuana;

(g) Hypodermic syringes, needles and other objects, used or designed for the purpose of parenterally injecting controlled substances into the human body;

(h) Objects, used or designed for the purpose of ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body.

§ 851. *Possession and sale of drug-related paraphernalia*

It shall be a violation of this article for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes stated in subdivision two of section eight hundred fifty of this article.

§ 852. *Power of municipality to revoke license or permit*

1. A county, town, city or village which issues a license or permit authorizing any person, firm or corporation to engage in the selling or offering for sale of any merchandise may revoke such license or permit upon a finding, pursuant to a hearing held thereon, that such person, firm or corporation has sold or offered for sale merchandise in violation of this article.

2. The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken, except that in a city having a population of seventy-five thousand or more, the same shall be surrendered and forfeited to the police commissioner or other head of the police force or department of said city and except that in the counties of Nassau and Suffolk, the same shall be surrendered and forfeited to the commissioner of the county police department.

§ 853. *Enforcement*

The attorney general or any state or local health officer, town, village or city attorney, or the chief executive officer of a municipality may institute an action in a court of competent jurisdiction to enjoin any activity prohibited pursuant to section eight hundred fifty-one of this chapter. If such court finds that any person, firm or corporation has sold or offered for sale any drug-related paraphernalia, it shall assess civil penalties against such person, firm or corporation in an amount not less than one thousand dollars nor more than ten thousand dollars for each such violation.

N.Y.Gen.Bus.Law §§ 850–853 (McKinney Supp. 1980–1981).

3. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1343(3), 1343(4), 2201.

4. *See* Prefatory Note, Model Drug Paraphernalia Act (August 1979); *Drug Paraphernalia: Hearing Before the House Select Comm. on Narcotics Abuse and Control,* 96th Cong., 1st Sess. 87 (1979) (statement of Peter B. Bensinger, Administrator, DEA).

5. *See* Appendix A for the text of the Model Act.

tions, sets forth a lengthy definition of drug paraphernalia. The first subsection defines drug paraphernalia as anything "used, intended for use, or designed for use" in growing, processing or ingesting a controlled substance. The general definition is followed by twelve specific examples, each described by the phrase "used, intended for use, or designed for use." The list of examples concludes with the category "objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body," followed by a list of thirteen items that could be used for that purpose, such as bongs, miniature cocaine spoons, vials and roach clips. The second subsection contains fourteen factors or guidelines that "should be considered" by courts and law enforcement authorities when determining whether an item is drug paraphernalia.

The second article defines the activities that constitute a criminal offense: (1) the use of or possession with intent to use drug paraphernalia; (2) the delivery or manufacture of drug paraphernalia by a person who knows or reasonably should know that the drug paraphernalia will be used with controlled substances; (3) the delivery of drug paraphernalia to minors, and (4) the advertisement of drug paraphernalia in the print media. The third article of the Model Act authorizes civil forfeiture of all drug paraphernalia and the fourth article provides that each section is severable in the event that any part of the Model Act is declared unconstitutional.

*The Statute*

The definition of drug-related paraphernalia in section 850 is less comprehensive than in Article I of the Model Act since it omits any general definition and adopts only eight of the Model Act's twelve specific examples. Each example is described by the phrase "used or designed for the purpose of" growing, processing or ingesting controlled substances. Section 850, more-

over, omits the Model Act's list of thirteen items in the category of "objects used or designed for the purpose of ingesting, inhaling, or otherwise introducing" certain illegal drugs into the human body as well as the fourteen enforcement guidelines.

Under section 851, it is a violation "for any person, firm or corporation to possess with intent to sell, offer for sale, or purchase drug-related paraphernalia under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more of the drug-related purposes" stated in section 850(2). Unlike the Model Act, however, the Statute does not impose criminal sanctions for violations. Rather, section 852(2) declares the possession with intent to sell or the offering for sale of drug paraphernalia to be a "nuisance" and sections 852 and 853 provide for civil penalties, including (1) the revocation, following an administrative hearing, of the vending license or permit of any person or corporation that sold or offered to sell merchandise in violation of the Statute, *see* N.Y.Gen.Bus.Law § 852(1), and (2) injunctive relief and the assessment of a fine in an amount of $1,000 to $10,000 per violation following judicial proceedings commenced by any one of a number of enforcement officers designated in section 853.[6] In addition, section 852(2) provides for civil forfeiture of drug paraphernalia. Thus, the major differences between the Statute and the Model Act are that the Statute (1) imposes civil rather than criminal penalties for its violation, (2) defines a violation solely in terms of the alleged violator's apparent rather than actual knowledge of an item's drug-related purpose, (3) does not contain a severability clause, (4) omits the Model Act's general definition of drug paraphernalia and fourteen enforcement guidelines, (5) does not prohibit the advertisement of drug paraphernalia, and (6) does not create a special violation for the sale of drug-related paraphernalia to minors.

---

**6.** A prior version of section 853 referred to the $1,000 to $10,000 fines as "punitive damages."

*See* 1980 N.Y.Laws, c. 811, § 2.

*Plaintiffs' Boutiques*

Plaintiff Brache owns the "Elephant's Trunk," located in Mount Kisco, New York and plaintiff Franza owns "East of the Sun," located in Scarsdale, New York. Both stores sell assorted clothing, jewelry and gift items and contain a separate "smoking accessories" section. Sales from these smoking accessories sections account for approximately thirty percent of each store's profits. Items sold in these sections include, among other things, a variety of pipes, rolling papers, bongs, scales, spoons, clips, grooved and ungrooved mirrors, mannitol, marihuana test kits, power hitters, the Cocaine Consumers Handbook and the Marijuana Growers Guide. No tobacco products are sold in the smoking accessories sections and plaintiffs concede that certain items have only one conceivable use—the preparation or ingestion of controlled substances. These items will be referred to as "single-use items."[7] Other items sold, such as pipes, rolling papers and clips, may or may not be used for drug-related purposes and will be referred to as "dual-use items."

The parties produced expert testimony regarding one of the most obvious dual-use items—pipes. The testimony of these witnesses indicates that while certain pipe features may be preferable for smoking tobacco,[8] the physical characteristics of a pipe, such as the material it is made from, the bowl size, and the presence or absence of a screen, stem or chamber, are not determinative of what substance the pipe user will smoke. In the last analysis, the individual can smoke any substance in any pipe if he

desires to do so. Similarly, the use to which rolling papers and other dual-use items can be put is limited only by the user's imagination.

The Court, however, does not credit plaintiffs' testimony that their sole purpose in selling both the single-use and dual-use items is to make a profit and that they never intended any items to be used for a drug-related purpose. Plaintiffs' awareness of the drug-related purpose of at least certain items sold in their smoking accessories sections is amply demonstrated by the evidence presented at trial, including the manufacturers' catalogs from which some of the items were ordered,[9] the instructions accompanying certain items, the conversations between plaintiffs' sales personnel, including plaintiff Franza, and Westchester County undercover investigators, as well as the variety and arrangement of the items offered for sale in the smoking accessories sections. Therefore, the Court concludes that plaintiffs intended certain items sold in their smoking accessories sections to be used for a drug-related purpose and that the Statute clearly informed them that such conduct would constitute a violation.

Although plaintiffs assert six constitutional claims in their complaint, they have pressed only three in their post-trial memorandum: (1) the Statute is not rationally related to any legitimate legislative goal and therefore violates the due process clause of the fourteenth amendment, (2) the Statute is impermissibly vague in violation of the due process clause of the fourteenth

---

7. Such single-use items include free base kits, Defendants' Exhibit O [hereinafter Plaintiffs' Exhibits will be referred to as "PX" and Defendants' Exhibits will be referred to as "DX"], which are used to separate diluents from controlled substances, marygins, DX B, a device used for straining marihuana, cocaine kits, DX M, toke-o-matic 20 bong hitters, DX D, and marihuana test kits, DX A. The Court intends the above to be an illustrative rather than an exhaustive list of the single-use items presently in the record.

8. According to defendants' expert witness, Mark Kilik, the best pipes for smoking tobacco are made of briar and meerschaum. He would not recommend glass, acrylic, stone or metal

pipes. Furthermore, he would not recommend pipes for tobacco smoking which did not have a flat-ended mouthpiece, a bowl size of at least 3/4 -inch and a properly bored draft hole.

9. Brache testified that he generally relied upon two smoking accessories suppliers, Headstone, Inc. and John Striano Sales, although he had also made purchases from the Big Apple Trading Company catalog, DX AA, the American Sales Company catalog, DX BB, and the Nalpac catalog, DX Y. Franza testified that she generally obtains her merchandise from her husband's distributing company, Headstone, Inc., although her husband also ordered merchandise from certain catalogs. *See* DX FF, GG, HH, II, JJ, LL, NN.

amendment, and (3) the Statute's civil forfeiture provision violates the fourth and fourteenth amendments by sanctioning warrantless seizure and confiscation of property without a hearing.[10]

## DISCUSSION

### Preliminary Issues

Although the defendants have not raised the issue, the Court finds that plaintiffs have demonstrated a genuine threat that Article 39 will be enforced against them by state or local enforcement officials. Therefore, the Court possesses subject matter jurisdiction since an actual case or controversy exists as required by Article III, § 2 of the Constitution. *See Steffel v. Thompson*, 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974); *Record Revolution No. 6 v. City of Parma*, 638 F.2d 916, 924 (6th Cir. 1980), *vacated and remanded*, —— U.S. ——, 101 S.Ct. 2998, 69 L. Ed.2d 384 (1981) ["*Record Revolution*"].

Moreover, the Court adheres to its decision, made when the Court denied defendants' motion to dismiss the complaint, that abstention pursuant to *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is inappropriate in this case. Federal courts that have considered the constitutionality of drug paraphernalia laws have uniformly refused to abstain since the issues raised in such litigation are predominantly questions of federal constitutional law and because such statutes have not been found susceptible to a construction by state courts that would avoid or modify the necessity of reaching the federal constitutional questions. *See Record Revolution, supra*, 638 F.2d at 925; *High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). Since the language of the Statute, in the Court's opinion, is not susceptible to a saving construction by state courts, abstention is not warranted.

### Rationality

In arguing that the Statute is not rationally related to a legitimate governmental interest because it will not decrease illegal drug use, plaintiffs rely upon the testimony of Dr. Norman Zinberg, Clinical Professor of Psychiatry at Harvard Medical School and an expert on the relationship between laws and effective social restraint, particularly in the area of controlled substances. It is Dr. Zinberg's opinion that prohibiting the sale of drug paraphernalia will not lessen drug use but may indeed increase the deleterious use of drugs by destroying an industry that helps create social rituals and controls for drug use and provides a source of information that encourages moderate drug use.[11] Transcript of Proceedings at 424–25, *Brache v. Westchester County*, 80 Civ. 4228 (CSH) [hereinafter "Tr."]. In support of his opinions, Dr. Zinberg refers

---

**10.** Plaintiffs' other constitutional claims are: (1) the Statute impermissibly restrains free speech in violation of the first and fourteenth amendments, (2) the Statute is directed against a certain type of store, and thus represents a bill of attainder subject to selective enforcement in violation of the equal protection clause of the fourteenth amendment and the bill of attainder clause of Article I, section 9, and (3) the Statute burdens interstate commerce in violation of the commerce clause of Article I, section 8. Even though plaintiffs did not press these claims in their post-trial memorandum, the Court has carefully considered them and finds them to be without merit. *First*, since the Statute does not expressly prohibit advertising, first amendment principles protecting commercial speech are inapplicable in this case. *See Brache v. County of Westchester, supra*, 507 F.Supp. at 581. *Second*, the Statute creates no classification among retailers and applies equally to all. Therefore, there is no basis for plaintiffs' equal protection or bill of attainder challenge. *See Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F.Supp. 834, 849 (D.Md. 1980). Finally, the Statute does not violate the commerce clause since its impact upon interstate commerce is incidental. *See New England Accessories Trade Ass'n v. Browne*, 502 F.Supp. 1245, 1255 (D.Conn.1980); *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra*, 500 F.Supp. at 849; *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289, 296 (D.Del.1980).

**11.** Although the Court respects Dr. Zinberg's scholarly achievements, the Court wonders how an industry that relies upon mottoes such as "we like to get our customers as high as we possibly can" will increase the likelihood of more moderate drug use. *See* DX II.

to the unsuccessful attempts to prohibit the use of alcohol earlier in this century. Rather than a total prohibition of paraphernalia, Dr. Zinberg states that other forms of regulation, such as the imposition of age-limits, would be more effective. He recognizes, however, that other experts in the field do not share his views.

Defendants' expert, Dr. Mitchell Rosenthal, a psychiatrist and the President of Phoenix House Foundation, disagrees with Dr. Zinberg, basing his opinions upon interviews with drug users and observations of the activities of numerous "head shops," stores where drug paraphernalia is sold. In Dr. Rosenthal's opinion, the paraphernalia industry, which has experienced tremendous growth in the last five years, both in terms of the variety of available items and the profits generated by their sale, serves to legitimize and condone the use of illegal drugs. He does not agree that the industry is a moderating influence on drug use although he acknowledges that no studies have been conducted which link the sale of drug paraphernalia to increased drug use.

When passing upon substantive due process claims, the judiciary must not substitute its judgment for that of the legislature or demand legislation that remedies all aspects of a given social problem. *Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F.Supp. 834, 848 (D.Md.1980). All that due process requires is that the legislation bear a rational relationship to a legitimate governmental purpose. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213–14, 57 L.Ed.2d 91 (1978). Since it is obvious that the desirability and efficacy of laws that regulate the sale and use of drug paraphernalia is a subject that generates conflicting

opinions and sentiments, the Court declines to hold that the New York State legislature, which has carefully considered the state's drug abuse problem, acted irrationally in finding that the growing availability and variety of drug paraphernalia leads to increased drug use, especially among young people. In short, the Court agrees that a state or local government "has the power through a properly drawn [statute] to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug-related devices." *Geiger v. City of Eagan*, 618 F.2d 26, 28 (8th Cir. 1980); *accord, Brache v. County of Westchester, supra*, 507 F.Supp. at 581; *New England Accessories Trade Ass'n v. Browne*, 502 F.Supp. 1245, 1254 (D.Conn. 1980); *World Imports v. Woodbridge Township*, 493 F.Supp. 428, 433 (D.N.J.1980); *Housworth v. Glisson*, 485 F.Supp. 29, 38 (N.D.Ga.1978), *aff'd mem.*, 614 F.2d 1295 (5th Cir. 1980). Having found that the subject matter of the Statute is rationally related to the state's legitimate interest in prohibiting the use of illegal drugs, the Court must, therefore, determine whether Article 39 is properly drawn to achieve the legitimate goal of prohibiting the sale and use of drug-related devices.

*Vagueness*

As their principal attack on the constitutionality of the Statute, plaintiffs contend that (1) the Statute's definition of "drug-related paraphernalia" lacks sufficient detail to warn reasonable retailers of the type of items that may not be sold or offered for sale, and (2) the Statute lacks sufficient guidelines to avoid arbitrary and discriminatory enforcement by enforcement officials and the courts.[12] In particular, plain-

---

12. There are numerous federal court decisions resulting from challenges to recently enacted state and local drug paraphernalia legislation. Legislation based upon the Model Act has been upheld in its entirety in *The Casbah, Inc. v. Thone*, 651 F.2d 551 (8th Cir. 1981); *Nova Records, Inc. v. Sendak*, 504 F.Supp. 938 (S.D. Ind.1980); *Tobacco Accessories v. Treen*, 501 F.Supp. 168 (E.D.La.1980); *Mid-Atlantic Accessories Trade Ass'n v. Maryland*, 500 F.Supp. 834 (D.Md.1980); *Florida Businessmen for Free*

*Enterprise v. City of Hollywood*, No. 80–6157–Civ.–NCR (S.D.Fla.1980); *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289 (D.Del.1980), and *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J.1980). Other courts have found legislation based upon the Model Act to be constitutional after severing certain sections. *See, e. g., New England Accessories Trade Ass'n v. Browne*, 502 F.Supp. 1245 (D.Conn.1980) (severed "reasonably should know" standard). Several other

tiffs argue that the Statute's definition of drug-related paraphernalia is not as comprehensive as that contained in the Model Act because section 850 omits examples of items that may be used to ingest controlled substances and the fourteen enforcement guidelines. Moreover, several courts have found the "designed for use" portion of the Model Act's definition to be vague and overbroad despite the "actual knowledge" requirement in the Act's substantive offense clauses. *See Record Revolution, supra*, 638 F.2d at 930–31; *Weiler v. Carpenter*, 507 F.Supp. 837, 843 (D.N.M.1981). *See also The Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 639 F.2d 373, 380–81 (7th Cir. 1981) (non-Model Act ordinance requiring licensing of persons selling drug paraphernalia held to be unconstitutionally vague), *prob. juris. noted,* —— U.S. ——, 101 S.Ct. 3028, 69 L.Ed.2d 404, (1981). Plaintiffs contend that since section 851 requires only constructive knowledge to sustain a violation, there can be no doubt that the Statute is unconstitutional.

Defendants attempt to defuse plaintiffs' vagueness challenge by relying upon the principle that such challenges must be considered in the factual context of each case since a "party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Ulster County Court v. Allen*, 442 U.S. 140, 154–55, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973). In essence, defendants argue that since the factual record in this case amply demonstrates that plaintiffs are aware that their conduct is prohibited by the Statute, plaintiffs lack standing to challenge the vagueness of the Statute as applied to them.[13]

The Court agrees that if the record demonstrated that plaintiffs knew the full extent of the Statute's prohibitions in regard to their conduct, they would not have standing to challenge its alleged vagueness even though it may arguably be vague as applied to the conduct of other retailers. The difficulty with defendants' argument in this case, however, is that the evidence indicates that plaintiffs are engaging in a course of conduct only part of which they know is prohibited by the Statute. There is no question that plaintiffs are aware of the drug-related purpose of single-use and certain dual-use items and that their conduct in selling or offering to sell such items is prohibited. Unfortunately, the record does not reveal plaintiffs' intended purpose for other dual-use items that are sold in their smoking accessories sections. Moreover, the testimony of a state enforcement official demonstrates that the threat of enforcement is substantial even if plaintiffs sold only the dual-use items for which the record does not reveal their knowledge or intent.

courts have found legislation based upon or adapted from the Model Act to suffer from constitutional defects that could not be cured through severance. *See Record Revolution No. 6 v. City of Parma*, 638 F.2d 916 (6th Cir. 1980), *vacated and remanded,* —— U.S. ——, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981); *Information Management Services, Inc. v. Borough of Pleasant Hills*, 512 F.Supp. 1066 (W.D.Pa.1981); *Weiler v. Carpenter*, 507 F.Supp. 837 (D.N.M.1981); *Brache v. County of Westchester*, 507 F.Supp. 566 (S.D.N.Y.1981); *Lazy J Ltd. v. Borough of State College*, No. 80–1167 (M.D.Pa. Jan. 30, 1981); *Back Door Records v. City of Jacksonville*, 515 F.Supp. 857 No. LR C 80–314 (E.D.Ark. Jan. 8, 1981). In addition, numerous decisions have construed legislation that was not based upon the Model Act. *See, e. g., Hejira Corp. v. MacFarlane*, 660 F.2d 1356 (10th Cir. 1981); *The Flipside, Hoff-*

*man Estates, Inc. v. Village of Hoffman Estates*, 639 F.2d 373 (7th Cir. 1981), *prob. juris. noted,* —— U.S. ——, 101 S.Ct. 3028, 69 L.Ed.2d 404 (1981); *Gasser v. Morgan*, 498 F.Supp. 1154 (N.D.Ala.1980); *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980); *Record Head Corp. v. Sachen*, 498 F.Supp. 88 (E.D.Wis.1980); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980); *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980); *Housworth v. Glisson*, 485 F.Supp. 29 (N.D.Ga.1978), *aff'd mem.*, 614 F.2d 1295 (5th Cir. 1980); *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D.N.J. 1979); *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich.1979).

13. *See* Defendants' Post-Trial Memorandum of Law at 65–66 (filed Mar. 13, 1981).

Therefore, this is not a case like *Broadrick* in which all of plaintiffs' conduct that could conceivably constitute a violation of the state statute fell within the constitutionally permissible "core area" of regulation. In such a case, a claim of unconstitutionality necessarily rests upon the assertion of the constitutional rights of third persons.[14] Here, on the other hand, the Statute clearly seeks to regulate the sale of both single-use and dual-use items, leading plaintiffs to contend that they are uncertain of the circumstances under which they can sell certain dual-use items. In the absence of actual enforcement against plaintiffs, the Court agrees with Judge Haight that an insufficient factual basis exists to adjudicate the constitutionality of the Statute as applied in this context. *See Brache v. County of Westchester, supra,* 507 F.Supp. at 573 (citing *Hejira Corp. v. MacFarlane,* Crim. Action No. 80–F–824 (D.Colo. Sept. 15, 1980) (oral opinion at Tr. 9), *rev'd on other grounds,* —— F.2d ——, No. 80–2062 (10th Cir. May 5, 1981)). Therefore, the Court finds that plaintiffs have standing to challenge the facial validity of the Statute. In so ruling, the Court is in accord with the other federal courts that have considered the constitutionality of drug paraphernalia legislation, with the exception of *Tobacco Road v. City of Novi,* 490 F.Supp. 537 (E.D.Mich.1979), with which the Court respectfully disagrees.

■ In advancing standards by which to measure the alleged vagueness of the Statute, the parties have engaged in considerable debate concerning whether the Statute is "civil" or "quasi-criminal" in nature.[15] Regardless of such characterizations, however, when legislation provides the state with procedures to deprive an individual of constitutionally protected rights, the enactment must meet due process standards:

> It [is] not the criminal penalty that was held invalid, but the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all. Any other means of exaction, such as declaring the transaction unlawful or stripping a participant of his rights under it, was equally within the principle of [vagueness].

*A. B. Small Co. v. American Sugar Refining Co.,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925); *accord, Giaccio v. Pennsylvania,* 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966). Since enforcement of the Statute would deprive violators of protected property rights through the revocation of business licenses and the imposition of fines, the due process principles enunciated by the Supreme Court in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), are relevant in this case:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

**14.** The Court notes that the Statute prohibits the purchase and use of drug-related paraphernalia as well as its sale. Although the issue has not been raised by the parties and as a general rule a plaintiff may not assert the constitutional rights of third parties, the Court finds that plaintiffs, as sellers, may assert the due process rights of purchasers that are related to their own due process claims in this Court, *see Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), although they lack standing to assert third party rights that are not related to their own claims, such as the privacy rights of purchasers. *See Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir. 1981). The Court nonetheless will primarily approach the vagueness analysis from the standpoint of the seller.

**15.** The Court finds it unnecessary for the purpose of deciding plaintiffs' vagueness challenge to decide whether the Statute is civil or quasi-criminal in nature under the criteria set forth in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), since due process principles prohibiting vagueness apply to civil as well as criminal statutes. In view of the magnitude of potential fines under section 853, the Court suspects that such a determination would become necessary in the context of deciding whether an individual charged with a violation in judicial proceedings is entitled to all the constitutional safeguards normally afforded a defendant in a criminal proceeding.

Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Id.* (footnotes omitted). Therefore, in the context of the present case, due process requires that the Statute (1) make reasonably clear to persons affected what conduct constitutes a violation, and (2) provide sufficient enforcement standards to prevent arbitrary and discriminatory enforcement. *See The Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates, supra*, 639 F.2d at 377–79, 383; *Housworth v. Glisson, supra*, 485 F.Supp. at 36–38.

■ With the above principles in mind, the Court turns to plaintiffs' vagueness arguments. Plaintiffs contend that the "designed for the purpose" language in section 850(2) is impermissibly vague since that phrase refers to unspecified physical characteristics of an item or the intended purpose of its designer or manufacturer. Defendants, however, contend that the words "designed" and "purpose" are equivalent to "intent" and therefore that drug-related paraphernalia is defined by the alleged violator's intent for the item to be used for one of the drug-related purposes enumerated in section 850(2). They further argue that this scienter requirement provides both an ascertainable standard of liability and fair notice to those affected by the Statute of the prohibited conduct.

■ The Court agrees that a statute which is otherwise vague may be saved by the inclusion of such a scienter or *mens rea* requirement. *See United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96

L.Ed. 367 (1952); *Record Revolution, supra*, 638 F.2d at 934. Moreover, a statute need not use the word "intent" since knowledge as an element of the violation may be deemed the equivalent of intent. *Brache v. County of Westchester, supra*, 507 F.Supp. at 575; *Gasser v. Morgan*, 498 F.Supp. 1154, 1159 (N.D.Ala.1980). Therefore, the Court must determine whether the "designed for the purpose" definition indeed creates such a scienter requirement when considered together with the "circumstances evincing knowledge" standard of section 851.

Courts that have considered the Model Act's similar "designed for use" language are divided as to its constitutionality. Some courts, having determined that "designed" refers to the physical characteristics of an item, have found the definition impermissibly vague since it does not include specific design characteristics that distinguish drug-related from non-drug-related items. *See, e. g., Record Revolution, supra*, 638 F.2d at 930; *Weiler v. Carpenter, supra*, 507 F.Supp. at 843. *See also The Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates, supra*, 639 F.2d at 380–81. Other courts adopt the subjective, intentional sense of the word "designed." *See, e. g., The Casbah, Inc. v. Thone*, 651 F.2d 551, at 560 (8th Cir. 1981); *Brache v. County of Westchester, supra*, 507 F.Supp. at 577; *New England Accessories Trade Ass'n v. Browne, supra*, 502 F.Supp. at 1251; *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra*, 500 F.Supp. at 845; *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289 (D.Del.1980).

The reasoning of two decisions is illustrative of the basis for these different opinions. In *Record Revolution*, the Sixth Circuit considered the constitutionality of three local ordinances which were almost identical to the Model Act. *See* 638 F.2d at 921–22. In discussing plaintiffs' vagueness challenge, the Court of Appeals found that the statutory terms "used" or "intended for use" are not vague or overbroad. *Id.* at 929. The Court, however, reached the opposite conclusion with respect to the phrase "designed for use":

"The term 'designed' could signify only devices that have no use or function other than as a means to ingest a controlled substance. Alternatively, 'designed' could include any devices that have a legitimate function but could be used for ingestion of drugs. That is, the term 'designed' could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a makeshift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil. . . . "

Vagueness enters in our case once the ordinances begin to define drug paraphernalia in terms of the primary adaption or dominant purpose of the design. Then the definition begins to depend upon the ingenuity or purpose of the purchaser rather than the seller and upon the current practices of the clandestine society of drug users.

The major ambiguity in defining drug paraphernalia in terms of the "design" of items is the lack of any design characteristics that distinguish lawful purposes from unlawful purposes. The type of object that can become, or be used as, drug paraphernalia is limited only by the imagination of the user. The record in our cases established the absence of any unique design characteristics.

*Id.* at 930–31 (citations and footnote omitted) (quoting *Indiana Chapter, NORML, Inc. v. Sendak*, No. TH 75–142–C, slip op. at 13 (S.D.Ind. Feb. 4, 1980) (3-judge district court), *vacated as moot at the time of appeal*, No. 80–1305 (7th Cir. July 22, 1980)).

The district court in *Mid-Atlantic Accessories Trade Association v. Maryland*, however, gave a contrary interpretation to the same language in the Model Act:

"Design" connotes an intentional act as well as an objective set of characteristics. When considered in the context of this statute, it is clear that it is the subjective, intentional sense in which "designed" is used.

The fact that "designed for use" and "intended for use" are used in the disjunctive throughout the Act does not necessarily indicate that each of the two phrases means something entirely different. Rather, it is apparent from a reading of the Act in its entirety that all three verbs (i. e. used, designed and intended) were included in the definition of drug paraphernalia so that the terms would be applicable to all the kinds of conduct barred in the Act's substantive sections. A seller will "intend" an item for use, while a manufacturer is more likely to "design" an item for use, and a user will simply "use" the item.

500 F.Supp. at 844–45.[16]

Having carefully considered the reasoning of both interpretations as well as the distinctive features of the Statute when compared to the Model Act, the Court finds that "designed for the purpose" refers to the subjective intent of the alleged violator rather than to the physical characteristics of a particular item. Even though scienter requirements are not as prevalent in civil statutes as in criminal enactments and sec-

---

**16.** Judge Robinson subscribed to a similar interpretation in *The Casbah, Inc. v. Thone*, 512 F.Supp. 474 (D.Neb.1980), *rev'd in part on other grounds*, 651 F.2d 551 (8th Cir. 1981):

"Designed for use" . . . refers not to the physical characteristics of an object but to the subjective intent or plan of the person controlling the object. The whole tenor of the statute makes clear that any object, *depending upon its use*, can be drug paraphernalia. In fact, section two of the statute sets out fourteen factors which are to be considered in determining if any given object is paraphernalia; those factors focus not on the physical features of the suspected item but on the context in which the item is found.

The factors are an aid in determining whether a person "designed" the object as paraphernalia. The physical properties of an item may not offer a clue about its illicit use. As the court in *Delaware Accessories Trade Assn. v. Gebelein*, [497 F.Supp. 289, 291] (D.Del.1980) said "the statute itself indicates that 'designed for use' refers not to structure but to intent." In short, when "designed for use" is integrated into the statute it is not vague nor even easily susceptible to misunderstanding.

At 482. *See generally* Note, *Anti-Drug Paraphernalia Laws: Void for Vagueness?*, 61 B.U. L.Rev. 453 (1981).

tion 850 omits the fourteen enforcement guidelines that clearly focus upon the intent of the alleged violator, the Statute's definition of drug-related paraphernalia is obviously adapted from the Model Act. Therefore, the following comments of the Model Act's drafters are relevant in determining the intended meaning of the definition adopted by the New York legislature:

To insure that innocently possessed objects are not classified as drug paraphernalia, Article I makes the knowledge or criminal intent of the person in control of an object a key element of the definition. Needless to say, inanimate objects are neither "good" nor "bad," neither "lawful" nor "unlawful." Inanimate objects do not commit crimes. But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control and the people subjected to prosecution. . . .

Consider the application of Article I to a spoon, a hypodermic syringe, and a length of surgical tubing. Each object has legitimate uses in the community. None is specifically designed for illegal use. Thus, when these objects are manufactured, delivered and possessed in lawful commerce, they are not considered paraphernalia. But, if these same objects are assembled and used by an addict to illegally melt heroin and inject it into his body, they become drug paraphernalia. . . .

Actual use of an object to produce, package, store, test or use illicit drugs need not always be shown. An object is considered to be drug paraphernalia whenever the person in control intends it for use with illicit drugs. . . . It should be noted that the person in immediate control of an object need not intend to use it personally in connection with drugs. It is enough if he holds the object with the intent to make it available to persons whom he knows will use it illegally. . . .

Comments at 6–7, Model Drug Paraphernalia Act (August, 1979) (citations omitted).

Although in the context of the Model Act "designed" may have been intended to refer to the subjective intent of a manufacturer of drug paraphernalia,[17] in the context of the Statute, which does not seek directly to regulate the activities of manufacturers, the conclusion that "designed for the purpose" refers to the subjective intent of the person charged with a violation is consistent with the ordinary meaning of "designed."[18] Moreover, section 850 does not utilize "designed for the purpose" in the disjunctive with "intended for the purpose" or "intended to be used," which might have suggested that "designed" was used in a sense other than referring to subjective intent. This interpretation is consistent with a prior version of Article 39 which defined drug-related paraphernalia as items "used or intended to be used" for one of a number of drug-related purposes. See 1980 N.Y.Laws, c. 811, § 850. Similarly, Governor Carey's state-

17. The Court recognizes that portions of the comments to the Model Act could be relied upon to support other interpretations of the phrase "designed for use":

Objects whose sole, or at least dominant purpose is to produce, package, store, test or use illicit drugs are considered to be "designed" for such use. A rebuttable presumption exists that these objects are intended for use for the purpose for which they are designed. See Israel v. United States, 63 F.2d 345 (3rd Cir. 1933). As such, they are presumed to be drug paraphernalia. Isomerization devices designed for use in increasing the THC content of marihuana provide a good example.

Comments at 7–8, Model Drug Paraphernalia Act (August 1979). Similarly, one of the state's enforcement officers, David A. Solomon, Director of the Division of Food & Drug Protection of the New York State Department of Health, at times discussed "designed" in terms of the designer's intention or the design characteristics of an item although recognizing that the intended purpose of the individual charged is an element of the definition of drug paraphernalia. See Transcript of Proceedings, Brache v. Carey at 46, 94–95, 80 Civ. 4311 (JMC) (Dec. 10, 11, 12, 1980) [hereinafter "R."]. The Court, however, is not bound by Solomon's interpretation of the statutory language. World Imports, Inc. v. Woodbridge Township, supra, 493 F.Supp. at 431.

18. "Designed" is defined as "made or done by design; intended; planned." See The Random House College Dictionary (1973 ed.).

ments upon signing the bill creating Article 39 indicate that the legislature considered the intent of the person charged to be a critical element:

> These bills would add a new Article 39 to the General Business Law to prohibit the possession and sale of paraphernalia *intended to be used* for growing, manufacturing, ingesting or enhancing the use of controlled substances or marijuana.
>
> . . . .
>
> In order to meet constitutional standards, the legislation seeks not to regulate mere possession or sale of such paraphernalia, but rather is directed at possession and sale thereof with *the intention that such items be used for a drug-related purpose.* Violations would result in civil sanctions, including forfeiture of the violator's license to do business and

imposition of a penalty of between $1,000 and $10,000.

Executive Memorandum on Approving 1980 N.Y.Laws, cs. 811 and 812 (June 30, 1980) (emphasis added). Having found that the phrase "designed for the purpose" is used in the subjective, intentional sense, the Court concludes there is no merit to plaintiffs' argument that the definition of drug-related paraphernalia refers to the "design" or intent of a remote manufacturer, seller or purchaser rather than the individual or entity charged with a violation. *See Record Revolution, supra,* 638 F.2d at 928–29; *New England Accessories Trade Ass'n v. Browne, supra,* 502 F.Supp. at 1251; *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra,* 500 F.Supp. at 844.[19] Given the fact that many forms of drug paraphernalia have legitimate as well as drug-related

19. In *Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir. 1981), the Tenth Circuit considered the constitutionality of a drug paraphernalia statute that defines paraphernalia as an item "primarily adapted, designed and intended for" one of four drug-related purposes. The statute also contains eleven factors for courts to consider in determining whether an item is drug paraphernalia, which were culled from the fourteen enforcement guidelines contained in the Model Act. The substantive criminal offenses prohibit both the possession of paraphernalia with intent to use it in violation of the law and the manufacture, sale or delivery of drug paraphernalia with intent that the item be used as drug paraphernalia.

The district court found the statute vague on its face because the phrase "primarily adapted, designed and intended" considered conjunctively, failed to give an individual of ordinary intelligence an opportunity to know what is prohibited and because the statute failed to provide that enforcement officers as well as the courts should consider the eleven enforcement factors. The district court, therefore, found a danger of arbitrary and discriminatory enforcement since the statute allowed police too much discretion in enforcement.

The Tenth Circuit reversed, finding that although the district court correctly concluded that the words "primarily adapted, designed and intended" had to be considered conjunctively, the definition could be saved by severing the word "adapted" which the court found inconsistent with the terms "designed" and "intended." The court of appeals discussed the meanings given to the term "designed" by courts considering the Model Act. Although the court appeared to conclude that "designed"

referred to the subjective intent of an individual rather than the physical characteristics of the item and found that "intended" referred to the subjective intent of the individual charged with the offense, it declined to decide whether "designed" also referred to the intent of the individual charged. The court reasoned that since the phrase "primarily designed and intended" must be considered conjunctively, the subjective intent of the alleged violator is an element of the definition of paraphernalia regardless of the interpretation the state courts give to the term "designed." In addition, the Tenth Circuit found that the alleged violator's subjective intent that the item be used for a drug-related purpose is an element of the substantive offenses, and that the eleven enforcement factors were part of the definition of paraphernalia and provided sufficient guidance to law enforcement officers in objectively determining what items constitute drug paraphernalia.

The Court agrees with the Tenth Circuit that the definition of drug paraphernalia must provide fair notice to those affected by making the subjective intent of the individual charged an element of the definition as well as by including objective standards to guide enforcement officers in assessing whether a particular item is drug paraphernalia. The Court, however, does not share the Tenth Circuit's uncertainty regarding whether "designed" refers to the intent of the individual charged. The Court finds that "designed," like "intended," refers to the intent of the person charged. The testimony of enforcement officer Solomon in this regard is consistent with the Court's conclusion. Solomon testified that he would consider the intentions of a designer or purchaser of an item, only if communicated to the seller, as relevant evi-

uses, the Court further concludes that it would be futile to attempt to define drug paraphernalia by reference to the specific physical attributes of the item. Therefore, the Court perceives no constitutional impediment to defining drug paraphernalia in terms of the alleged violator's subjective intent that the item be used for a drug-related purpose since the individual is no doubt aware of his own intentions and thus has reasonable notice that his conduct falls within the prohibition of the Statute.[20]

■ Unfortunately, notwithstanding the conclusion that section 850(2)'s definition of drug-related paraphernalia is not vague since an element thereof is the alleged violator's drug-related purpose for the item's use, the Court finds that the protection afforded thereby is vitiated by section 851's standard of liability. Under section 851, a violation occurs when a person possesses with intent to sell, offers for sale, or purchases drug-related paraphernalia "under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased" for one of the drug-related purposes listed in section 850(2). Plaintiffs and defendants agree that a person is liable under this standard if the circumstances indicate that a "reasonable person" would know the drug-related purpose of the item's sale or purchase.[21] Therefore, unlike the definition of drug-related paraphernalia which depends upon the alleged violator's subjective intention that the item be used for a drug-related purpose, a violation occurs if the circumstances of the sale indicate that the individual reasonably should have known of the item's drug-related purpose. Since a violation does not depend upon the alleged violator's subjective awareness of his own drug-related purpose and the Statute does not include enforcement guidelines which define the "circumstances" in which a person reasonably should know the drug-related purpose of an item's sale or purchase, for the reasons stated below, the Court is constrained to find that section 851's standard of liability is void for vagueness. Needless to say, section 851's definition of a violation is the heart of the Statute's regulatory scheme, and thus the defect found by the Court cannot be cured judicially by severance or otherwise.

Plaintiffs contend section 851's standard of liability invites arbitrary and discriminatory enforcement. Defendants respond that this standard is commonly employed in the context of criminal statutes [22] and that the Model Act includes a similar constructive knowledge standard that has been upheld by several courts that have considered its constitutionality in the context of crimi-

---

dence in determining the seller's intent. *See* R. at 92–93.

**20.** Even when the definition of drug paraphernalia incorporates such a scienter requirement, however, to prevent arbitrary enforcement the legislation must include objective enforcement guidelines by which enforcement officers can assess the subjective intent of the alleged violator. *See Hejira Corp. v. MacFarlane, supra.*

**21.** *See* Plaintiffs' Post-Trial Memorandum of Law at 23 (filed Mar. 10, 1981); Defendants' Post-Trial Memorandum of Law at 75–76 (filed Mar. 13, 1981). Moreover, it could be argued that "circumstances evincing knowledge" is equivalent to "knowing" and thus requires proof that the alleged violator subjectively knew the item's drug-related purpose rather than proof that the "circumstances" objectively indicated such a mental state. The Court presumes, however, that the legislature would have used the term "knowing" if it intended a subjective intent standard.

**22.** A similar standard of liability is employed in section 220.50 of the New York Penal Law which defines the criminal use of drug paraphernalia in the second degree:

A person is guilty of criminally using drug paraphernalia in the second degree when he knowingly possesses or sells:

1. Diluents, dilutants or adulterants, including but not limited to, any of the following: quinine hydrochloride, mannitol, mannite, lactos [sic] or dextrose, adapted for the dilution of narcotic drugs or stimulants under circumstances evincing and [sic] intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purposes of unlawfully mixing, compounding, or otherwise preparing any narcotic drug or stimulant; or

2. Gelatine capsules, glassine envelopes or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant.

nal statutes. Defendants therefore argue that such a standard of liability is clearly permissible in the context of a civil statute such as Article 39.

In advancing these arguments, the parties assume that section 851's standard of liability—that it is a violation for any person to possess with intent to sell, offer for sale or purchase drug-related paraphernalia *"under circumstances evincing knowledge that the paraphernalia is possessed, sold or purchased for one or more"* of the drug-related purposes stated in section 850(2)—is equivalent to the Model Act's constructive knowledge standard, namely, that "[i]t shall be unlawful for any person to . . . possess with intent to deliver . . ., drug paraphernalia, knowing, *or under circumstances where one reasonably should know, that it will be used to plant, . . . ingest . . ., or otherwise introduce into the human body a controlled substance in violation of this Act."* Model Act, Art. II, § (B). This assumption, however, is unfounded.

> Criminally using drug paraphernalia in the second degree is a class A misdemeanor. *Id.* (McKinney 1980) (footnotes omitted). Section 220.50 is directed at the activities of so-called "drug factories." *See* Hechtman, *Practice Commentaries,* N.Y.Penal Law § 220.50 (McKinney 1980). Although by its terms, section 220.50 regulates the conduct of sellers, it has only been enforced against defendants who possessed and used the items in conjunction with controlled substances. In that context, its constitutionality has been upheld against claims of vagueness. *See, e. g., People v. Taylor,* 70 Misc.2d 970, 335 N.Y.S.2d 324 (Dutchess Co.Ct.1972).

**23.** As Judge Stapleton stated in *Delaware Accessories Trade Ass'n v. Gebelein, supra* :
> So-called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's pur-

Under the Model Act, a seller is liable when he possesses with intent to deliver or delivers an item if (1) he intends the item to be used for a drug-related purpose and (2) he knows or reasonably should know that the purchaser will ultimately use the item for a drug-related purpose. *See Delaware Accessories Trade Ass'n v. Gebelein, supra,* 497 F.Supp. at 294. Thus, the seller's intent that an item be used for a drug-related purpose defines drug paraphernalia while his actual or constructive knowledge that the sale or potential sale will facilitate illegal drug use defines the offense. Under this standard of liability, a seller who intended an item to have a drug-related purpose would not violate the Model Act if he sold it to an individual who he knew would not use it for a drug-related purpose.[23]

Unlike the Model Act, section 851's standard of liability refers to the seller's intended purpose in selling the item rather than to the ultimate use to which the purchaser

> pose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue.
497 F.Supp. at 294.

Courts that have examined the Model Act's constructive knowledge standard are divided on its validity. Some courts that have upheld the standard have relied on the fact that many criminal statutes hold a person criminally responsible under a constructive knowledge standard. *See The Casbah, Inc. v. Thone, supra,* 512 F.Supp. at 561; *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra,* 500 F.Supp. at 834; *Florida Businessmen for Free Enterprise v. Florida,* 499 F.Supp. 346, 353 (N.D.Fla.1980); *Delaware Accessories Trade Ass'n v. Gebelein, supra,* 497 F.Supp. at 294. Other courts argue that the same circumstantial evidence is considered by law enforcement officers in determining the seller's actual or constructive knowledge and that in the last analysis the constructive knowledge standard is no different in application than the actual knowledge standard. *See World Imports, Inc. v. Woodbridge Township, supra,* 493 F.Supp. at 433. Therefore, the latter courts have concluded that the constructive knowledge standard is no more vague than the actual knowledge standard. Furthermore, these decisions do not perceive any erosion of the subjective intent element in the definition of drug paraphernalia that is credited with saving the definition from vagueness:
> [B]ecause a requirement of specific intent is included in the definition of drug paraphernalia, a seller of drug paraphernalia must al-

will put the item.[24] Therefore, a violation occurs when: (1) the seller possesses paraphernalia with intent to sell it under circumstances evincing his knowledge that he possesses the paraphernalia for a drug-related purpose; (2) the seller offers to sell paraphernalia under circumstances evincing his knowledge that he is selling the paraphernalia for a drug-related purpose; or (3) a purchaser purchases paraphernalia under circumstances evincing his knowledge that the paraphernalia is purchased for a drug-related purpose.[25] Thus, although section 850(2) defines paraphernalia in terms of the

---

ready have intended that the item be sold for drug use before knowledge of its use by the buyer comes into play. Under these circumstances, it is not constitutionally improper that the seller be required to open his eyes to the objective realities of the sale.
*Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra*, 500 F.Supp. at 845.

Courts that have found the "reasonably should know" standard impermissibly vague reject the notion that constructive knowledge is the same as actual knowledge in application even though both standards require proof by circumstantial evidence in most cases. *See, e. g., New England Accessories Ass'n v. Browne, supra*, 502 F.Supp. at 1252–53. It is recognized that a far more stringent standard protects a defendant when the state must prove that he *knew* an item would be used for a drug-related purpose rather than *he reasonably should have known* of that ultimate use. *See id.* at 1253. In short, these courts find that in the context of drug paraphernalia statutes which seek to regulate the sale of dual-use items, the constructive knowledge standard does not offer sellers or law enforcement officers sufficient guidance as to what circumstances give rise to a reasonable belief that an item will be used for a drug-related purpose. *See Knoedler v. Roxbury Township*, 485 F.Supp. 990, 993 (D.N.J. 1980). Judge Sarokin aptly summarizes the problem:

[T]he seller faced with the Roxbury ordinance has to do more than merely assess whether or not the purchaser is an unlawful user of drugs. He must also determine what the customer intends to do with the items of purchase. Certainly in a case where the purchaser announces his or her intention to utilize the paraphernalia purchased for an illegal purpose, the seller would be placed in no dilemma; however, the question arises as to what would create a reasonable belief in the mind of the seller in the absence of such an unlikely announcement by the purchaser. Does the purchaser's age, sex, mannerisms or dress afford to a seller reason to believe that the paraphernalia will be used for an illegal purpose? Or should the nature of the purchaser's companions or the items he or she carries be determinative? These questions indicate the difficulty that a merchant, as well as a law enforcement officer, would have, in the absence of an admission by the purchaser, in determining what gives rise to a reasonable belief that a purchaser intends to utilize the paraphernalia for an illegal purpose.
*Id.*

Finally, some courts have found that the constructive knowledge standard vitiates the specific intent element of the drug paraphernalia definition. *See Record Revolution, supra*, 638 F.2d at 935–36; *New England Accessories Trade Ass'n v. Browne, supra*, 502 F.Supp. at 1252–53. *See also Gasser v. Morgan, supra*, 498 F.Supp. at 1165; *Knoedler v. Roxbury Township, supra*, 485 F.Supp. at 993. Although in the context of the Model Act it does not appear to the Court that the seller's constructive knowledge of the purchaser's ultimate drug-related use of an item is inconsistent with or dilutes the definition's requirement that the seller subjectively intends the item for a drug-related purpose, section 851's standard of liability clearly vitiates the definition's scienter requirement by focusing on the seller's apparent knowledge of his own drug-related purpose rather than on the ultimate use of the item by the purchaser.

24. The Model Act contains a separate offense section prohibiting the use and possession with intent to use drug paraphernalia for a drug-related purpose. The constructive knowledge of the purchaser is not an element of that offense. Section 851, on the other hand, imposes liability upon both purchasers and sellers of drug paraphernalia. Although the Court focuses on the liability of the seller throughout its discussion of section 851's standard of liability, the same shortcomings found by the Court would apply with respect to the purchaser's liability.

25. Alternatively, section 851 may be construed to impose liability upon a seller who possesses with intent to sell or offers to sell paraphernalia under circumstances evincing his knowledge that (1) he possesses paraphernalia for a drug-related purpose, (2) he sold paraphernalia for a drug-related purpose, *or* (3) the purchaser purchased drug-related paraphernalia for a drug-related purpose. The third alternative is similar to the Model Act's constructive knowledge standard since the mental operation of the seller focuses upon the ultimate use to which the purchaser will put the item. Since section 851 sets forth these three alternatives in the dis-

alleged violator's actual subjective intent that the item be used for a drug-related purpose, the violation itself may occur if, under the circumstances, it objectively appears that the alleged violator knows of his own drug-related purpose for a particular item.

Under this standard, the numerous state and local officials charged with enforcing the Statute[26] are told that a violation occurs when the "circumstances" indicate that the seller reasonably should know the drug-related purpose of an item rather than when the seller actually intends the item to be used for a drug-related purpose or knows of its ultimate drug-related use. The problems in enforcing such a standard are amply demonstrated by the testimony of David A. Solomon, one of the state officials responsible for enforcing Article 39. See R. at 10. Solomon, an attorney, reviewed defendants' pre-trial memorandum and several recent court decisions dealing with drug paraphernalia legislation prior to testifying. Although he stated that the definition of drug-related paraphernalia includes the seller's intent to sell an item for a drug-related purpose, when shown a particular exhibit and asked if it was drug paraphernalia, Solomon replied that he would have to consult an expert. Solomon later explained that although an expert cannot definitively state that a particular item is or is not drug paraphernalia since that finding depends on the seller's intent, an expert could testify that an item is commonly used for a drug-related purpose and such evidence would be very pertinent in adducing the seller's intent. See R. at 73. He further testified

that although magazines and books sold in a store may be probative evidence of the seller's intent, such items alone cannot be considered drug-related paraphernalia. See R. at 61–63.

Solomon's testimony demonstrates that the Statute lacks any guidelines upon which enforcement officers may rely in determining what circumstances sufficiently evince the seller's knowledge that his possession or sale of an item is for a drug-related purpose.[27] At one point in his testimony, Solomon stated that if a person sold rolling papers without tobacco, that circumstance alone would indicate that the rolling papers are sold for a drug-related purpose. See R. at 27. Nevertheless, he subsequently testified that if a seller sold rolling papers, clips and pipes, or some combination of three or four or five such dual-use items, he would be in danger of violating the Statute. See R. at 33–34, 50. As the Statute is presently written, Solomon was obviously uncertain as to where the line of enforcement would be drawn. Thus, unlike the Model Act, the Statute contains no enforcement guidelines to aid enforcement officials in assessing the seller's actual intent, much less the circumstances that evince his knowledge of the drug-related purpose of the sale.

The Court has no doubts that in enacting Article 39 the legislature sought to achieve the legitimate goal of discouraging drug use through constitutional means. No court, however, state or federal, can disregard the clear meaning of statutory language. While the definition of drug para-

junctive, under the first two alternatives liability nonetheless may depend upon the seller's apparent knowledge of his own drug-related purpose for the item's use and thus section 851's standard of liability is inconsistent with the subjective intent requirement in the definition of drug-related paraphernalia. Similarly, a purchaser is liable when he purchases paraphernalia under circumstances evincing his knowledge that he possesses or purchases paraphernalia for a drug-related purpose. Thus, this standard is also inconsistent with the definition's subjective intent requirement.

26. Under section 853, the attorney general, any state or local health officer, town attorney or

the chief executive officer of a municipality may institute judicial enforcement proceedings. Enforcement Officer Solomon testified that there are hundreds of such individuals throughout the state. See R. at 23–25, 48.

27. Solomon testified that prior to enforcement, state investigators would be trained through the circulation of enforcement guidelines. See R. at 80–81. The defendants, however, cannot rely upon either the possible promulgation of enforcement guidelines or judicial clarification after the Statute is enforced to overcome plaintiffs' claims of vagueness.

phernalia focuses on the intent of the individual charged, thereby giving him notice of the prohibited conduct, a violation of Article 39 depends upon undefined circumstances that leave enforcement officials and courts free to find violations on an *ad hoc* basis. Since drug paraphernalia legislation of necessity must seek to regulate the sale of items that have both legitimate and drug-related uses, such legislation must specify the limited circumstances in which the sale of such items is unlawful. The Court reluctantly concludes that Article 39 has not done so. Since plaintiffs have demonstrated that they are clearly threatened with prosecution under Article 39 that would deprive them of substantial portions of their businesses, the Court finds that they have sufficiently established irreparable injury and are thus entitled to both declaratory and injunctive relief preventing the enforcement of Article 39. *See Record Revolution, supra,* 638 F.2d at 937–38.

*Forfeiture*

Plaintiffs also contend that the forfeiture provisions of section 852(2) violate the fourth and fourteenth amendments by authorizing the warrantless seizure and automatic forfeiture of drug-related paraphernalia without notice or a hearing. Section 852(2) provides in pertinent part:

> The possession with intent to sell or offering for sale of drug-related paraphernalia as defined herein is hereby declared to be a nuisance, and where any such drug-related paraphernalia shall be taken from the possession of any person, the same shall be surrendered and forfeited to the sheriff of the county wherein the same shall be taken . . . .

N.Y.Gen.Bus.Law § 852(2) (McKinney Supp. 1980–1981).[28]

Defendants contend that the forfeiture provisions do not threaten unconstitutionally to deprive plaintiffs of their property rights in their inventories for two reasons. *First,* defendants note that the Statute does not authorize anyone to seize the paraphernalia. They claim that the legislature is in the process of reconsidering this "legislative oversight," and contend that, in the meantime, the Court need not be concerned with the forfeiture provision since it cannot be utilized without a prior seizure.[29] *Second,* assuming the power to seize paraphernalia is found by implication, defendants contend that a judicial or administrative hearing must precede seizure and forfeiture under this section.[30] In this regard, defendants rely upon Solomon's testimony that although section 852(2)'s forfeiture provisions are "hanging there fairly loosely," *see* R. at 66, he would read that section in conjunction with section 852(1) or section 853 as requiring pre-seizure litigation of the forfeiture issue either at an administrative hearing held to consider the revocation of the seller's business license or at a judicial hearing when injunctive relief or fines are sought. *Id.* It is his understanding of the Statute's intended enforcement mechanisms that (1) the local or municipal authorities who issue business licenses are authorized by section 852(1) to institute administrative proceedings to revoke that license upon a finding that the seller has sold or possessed with intent to sell merchandise in violation of section 851; (2) section 852(2) authorizes those same local or municipal authorities to seize and forfeit paraphernalia, presumably after their administrative proceedings have established that a public nuisance exists,

---

28. A similar forfeiture provision appears in section 153 of the Alcoholic Beverage Control Law (McKinney 1970):

> The unlawful ownership, operation, possession, control or use of any still or distilling apparatus or illicit alcoholic beverage is a nuisance, and each such still and distilling apparatus and illicit alcoholic beverage is hereby declared to be a nuisance, and when any such still or distilling apparatus or illicit alcoholic beverage shall be taken from the possession of any person, the same shall be

surrendered and forfeited to the sheriff of the county wherein the same shall be taken . . . .

The constitutionality of this provision has not been addressed by the New York courts.

29. *See* Memorandum of Law Submitted on Behalf of Defendants in Opposition to Plaintiffs' Motion for a Preliminary Injunction and In Support of Defendants' Motion to Dismiss at 35 (filed Aug. 27, 1980).

30. *Id.* at 36.

and (3) the Attorney General, state or local health officers, or municipal attorneys or chief executives may seek injunctive relief and/or fines of $1,000 to $10,000 per violation in judicial proceedings. In addition, Solomon contends that New York courts may interpret the Statute to permit the Attorney General, state or local health officers, or municipal attorneys or chief executives to seek forfeiture as a remedy for contempt of an injunction order issued in judicial proceedings. R. at 68–69, 76.

■ Although the resolution of the forfeiture issue is not necessary in view of the Court's conclusion that section 851's standard of liability is impermissibly vague, the Court notes that there are several major problems with the forfeiture provisions as they are now written.[31] *First*, as defendants correctly point out, the Statute does not specifically authorize any of the enforcement officials mentioned in section 852(1) or section 853 to seize the paraphernalia. Although the Statute may be interpreted implicitly to authorize some or all of those officials or the police to seize paraphernalia, there is no indication as to the procedures that would be followed in making such a seizure. Even though Article 39, unlike many other drug paraphernalia statutes,[32] does not impose criminal penalties, there is no doubt that searches and seizures during the course of administrative or civil proceedings must comply with the requirements of the fourth amendment. *See Marshall v. Barlow's Inc.*, 436 U.S. 307, 325, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 545, 87

S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967); *United States v. Gordon*, 493 F.Supp. 808, 813–14 (N.D.N.Y.1980); *Drug Purchase, Inc. v. Dubroff*, 485 F.Supp. 887, 891 (S.D. N.Y.1980); *Reyes v. Edmunds*, 472 F.Supp. 1218, 1222–23 (D.Minn.1979); *Bormann v. Tomlin*, 461 F.Supp. 193, 196–98 (S.D.Ill. 1978), *aff'd mem.*, 622 F.2d 592 (7th Cir. 1980); *United States v. Articles of Hazardous Substance*, 444 F.Supp. 1260, 1264–66 (M.D.N.C.), *modified*, 588 F.2d 39 (4th Cir. 1978); *Oilan v. Yee Loy Loong*, 69 Misc.2d 108, 329 N.Y.S.2d 531 (N.Y.Civ.Ct.1972); *Finkenberg Furniture Corp. v. Vasquez*, 67 Misc.2d 154, 324 N.Y.S.2d 840 (N.Y.Civ.Ct. 1971). *See also* Case Comment, *Warrantless Administrative Searches Permissible Under the Federal Mine Safety and Health Act of 1977: Marshall v. Stoudt's Ferry Preparation Co.*, 64 Minn.L.Rev. 1076 (1980). Therefore, if the legislature intends to authorize seizure prior to notice and an adversarial hearing, the seizure, at the very minimum, should be made expressly conditional upon a finding of some form of probable cause that the seller has violated section 851 by selling or offering to sell the particular items seized. The legislature is clearly capable of drafting legislation that specifically designates the seizing officials and describes the procedures they should follow to ensure reasonable searches and seizures. *See, e. g.*, N.Y.Educ.Law §§ 6813(1), 6823 (McKinney 1972); N.Y.Pub. Health Law § 3388 (McKinney 1977 & Supp. 1980–1981).

■ *Second*, the requirements of procedural due process apply whenever the state deprives a person of "liberty" or "property" interests within the meaning of the fourteenth amendment. There is no question

---

**31.** In addition, the Court realizes that the state courts might interpret this portion of the Statute as requiring a finding of probable cause prior to seizure and either a pre- or post-seizure hearing on the issue of forfeiture. Therefore, were this the only constitutional infirmity alleged in the Statute, abstention would be appropriate. *See* page 330 *supra.*

**32.** The forfeiture provisions of criminal drug paraphernalia laws have generally been upheld against due process and fourth amendment challenges since forfeiture procedures in those enactments did not abrogate the fourth amend-

ment's probable cause standard and were consistent with the due process requirements of *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). *See New England Accessories Trade Ass'n v. Browne, supra*, 502 F.Supp. at 1256; *Mid-Atlantic Accessories Trade Ass'n v. Maryland, supra*, 500 F.Supp. at 848–49; *Delaware Accessories Trade Ass'n v. Gebelein, supra*, 497 F.Supp. at 296. *See also Nova Records, Inc. v. Sendak*, 504 F.Supp. 938, 941 (S.D.Ind.1980) (forfeiture provisions were not challenged).

that sellers of alleged drug paraphernalia have a vital property interest in their inventories. It is also clear, however, that the state, in the exercise of its police power, may seize and forfeit articles that are intended to facilitate illegal drug use. *See, e. g., New England Accessories Trade Ass'n v. Browne, supra,* 502 F.Supp. at 1256. The question therefore becomes what form of process is due before a seller permanently forfeits drug paraphernalia.

The language of section 852(2) does not support defendants' argument that the legislature intended pre-seizure notice and an adversarial hearing, even when read in conjunction with sections 852(1) and 853. Moreover, the Court seriously doubts whether due process requires pre-seizure notice and a hearing. Although the deprivation of private property without a prior hearing is suspect, it is equally true that "extraordinary" circumstances may justify a brief postponement of notice and the opportunity for a hearing. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 677–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 611–20, 94 S.Ct. 1895, 1902–06, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972); *Eagle v. Koch,* 471 F.Supp. 175, 178–79 (S.D.N.Y.1979). Indeed, even when sensitive first amendment interests are involved, due process does not require an adversarial proceeding prior to the initial seizure as long as a prompt judicial determination is available. *See United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). *See also Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). But when, as here, the Statute neither provides for pre- or post-seizure notice and an adversarial hearing, it is clear that the requirements of due process have not been met.

## CONCLUSION

In accordance with the foregoing, after consolidating a hearing on plaintiffs' motion for a preliminary injunction with a trial on the merits of the complaint, the Court finds for plaintiffs. Article 39 of the New York General Business Law is hereby declared to be impermissibly vague and its enforcement is permanently enjoined.

These are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Submit Judgment on Notice.

SO ORDERED.

## APPENDIX A

The Model Act provides:

### ARTICLE I
#### (Definitions)

SECTION (insert designation of definitional section) of the Controlled Substances Act of this State is amended by adding the following after paragraph (insert designation of last definition in section):

"( ) The term 'Drug Paraphernalia' means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act (meaning the Controlled Substances Act of this State). It includes, but is not limited to:

(1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

(3) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;

(4) Testing equipment used, intended for use, or designed for use in identifying,

or in analyzing the strength, effectiveness or purity of controlled substances;

(5) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances;

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana;

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(9) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

(11) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body;

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons, and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(*l*) Bongs;

(m) Ice pipes or chillers;

"In determining whether an object is Drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this Act;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use as Drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community;

(14) Expert testimony concerning its use."

## ARTICLE II

### (Offenses and Penalties)

SECTION (designation of offenses and penalties section) of the Controlled Substances Act of this State is amended by adding the following after (designation of last substantive offense):

"SECTION (A) (Possession of Drug Paraphernalia)

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act. Any person who violates this section is guilty of a crime and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

"SECTION (B) (Manufacture or Delivery of Drug Paraphernalia)

It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act. Any person who violates this section is guilty of a crime and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

"SECTION (C) (Delivery of Drug Paraphernalia to a Minor)

Any person 18 years of age or over who violates Section (B) by delivering drug paraphernalia to a person under 18 years of age who is at least 3 years his junior is guilty of a special offense and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

"SECTION (D) (Advertisement of Drug Paraphernalia)

It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia. Any person who violates this section is guilty of a crime and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

## ARTICLE III

### (Civil Forfeiture)

SECTION (insert designation of civil forfeiture section) of the Controlled Substances Act of this State is amended to provide for the civil seizure and forfeiture of drug paraphernalia by adding the following after paragraph (insert designation of last category of forfeitable property):

"( ) all drug paraphernalia as defined by Section ( ) of this Act."

## ARTICLE IV

### (Severability)

If any provision of this Act or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.