Harry T. Nusbaum, J.
This summary holdover proceeding was instituted by the landlord to evict the tenant on the ground that the tenant was in violation of the provisions of the Administrative Code of the City of New York relating to overcrowding.
Specifically, the petition alleges that the premises occupied by the tenant harbors more than four persons (the allowable maximum pursuant to its cubic foot content) and that such continued unlawful occupancy may subject the landlord to civil and/or criminal penalties.
The tenant has interposed an answer denying all the allegations contained in the petition, other than that she is the tenant in possession of the premises and that the premises in question are a multiple dwelling. In addition, the answer asserts six affirmative defenses attacking the jurisdiction of the court. The first four of these defenses, which are technical in nature, assert the failure of the petitioner to comply with the provisions of section 735 of the Real Property Actions and Proceedings Law and certain provisions of the New York City Rent and Eviction Regulations. The fifth defense attacks the petition on the ground that the landlord had failed to obtain a certificate of eviction as allegedly required by the Rent and Eviction Regulations ; and the sixth affirmative defense asserts that the court lacks jurisdiction over the respondent because the inspection upon which the violation was based was unconstitutionally obtained and in violation of the Thirteenth and Fourteenth Amendments of the Constitution. The applicability of the Thirteenth Amendment to the question escapes this court.
Due to the nature of the violation pleaded and this court’s fear that continued occupancy might be hazardous to the lives of the tenant and her seven infant children, decision was reserved on the technical objections, and upon the consent of both parties the matter proceeded to trial on the merits. By this procedure, the court hoped to determine whether in fact *110 a dangerous condition existed which required the immediate removal of the tenant and her seven children to other quarters.
The testimony of the inspector from the Department of Rent and Housing Maintenance, who had placed the violation on the premises, established that no danger or fire hazard existed which would require emergency action by the city authorities. He testified that although, according to his measurements, the cubic foot requirements for each adult and child were not met, the alleged overcrowding was not unsafe or in any way imperiled the lives of the occupants of the apartment. There seemed to be a discrepancy between the number of rooms listed in the petition (four) and the number of rooms actually measured by the inspector (three), but before the matter could be fully explored the tenant’s illness necessitated an adjournment.
On the adjourned date, the testimony adduced revealed that the inspection and measurements made by the building inspector were somewhat less than thorough. Although the apartment was listed as a four-room apartment, the inspector admitted under cross-examination that he had measured only three rooms; the measurement of the fourth room was not made because the door appeared to be locked and access to it was not readily available.
At the close of the trial, the tenant respondent moved to dismiss the petition on the grounds (1) that the violation upon which the holdover proceeding was based was illegally and improperly placed upon the premises due to the failure of the Department of Rent and Housing Maintenance to establish that overcrowding existed therein under the applicable regulations; and (2) that the inspection of the premises and the evidence obtained as a result of such inspection were illegally procured in violation of the tenant respondent’s constitutional rights.
Treating first with the constitutional questions, the court is of the opinion that the tenant’s constitutional rights under the Fourth and Fourteenth Amendments of the Constitution were not abridged or violated.
The question posed is novel only from the standpoint that it is rarely raised in civil proceedings and practically never, within the knowledge of the court, in a landlord and tenant proceeding where the continued occupancy by the tenant was at stake. Nevertheless the Supreme Court of the United States has passed upon peripheral questions on several occasions and in each case they proved troublesome of determination. In *111 Frank v. Maryland (359 U. S. 360) the Supreme Court, by a five to four decision, upheld a conviction of a homeowner who refused to permit a municipal health inspector to enter and inspect his premises without a search warrant. In Camara v. Municipal Ct. (387 U. S. 523) and, in See v. City of Seattle (387 U. S. 541) the court, in a six to three decision, overruled its holding in the Frank v. Maryland case, indicating that only in special emergency situations could a warrantless search be justified.
The basic principle that people are to be secure in their persons, houses and papers and effects against unreasonable searches and seizures, as set forth in the Fourth Amendment to the Constitution, cannot be disregarded, even in civil and administrative proceedings. This is so, even though it would appear that the inspection is made pursuant to municipal fire, health and housing inspection programs established for the purpose of safeguarding the health and safety of its citizens.
However, unlike the court’s holdings in the corollary illegal search and seizure cases pertaining to criminal investigations (Mapp v. Ohio, 367 U. S. 643), there is a recognition that the States and municipalities, in the exercise of their inherent police powers for the benefit of the health and safety of the public must have the right and power to inspect and investigate building premises to prevent the creation of hazardous conditions dangerous to the public and to the persons occupying or lawfully upon such premises.
The question involved, then, is the means and methods to be used in making such inspections: whether and when such inspections can be made without a warrant and whether and when a warrant should be required to avoid a violation of the Constitution’s guarantees against unreasonable and therefore illegal search. The Supreme Court’s latest pronouncements on the subject (Camara v. Municipal Ct., supra; See v. City of Seattle, supra) would indicate that certain ground rules should be followed; to wit, no inspection should be made without a warrant if entry for the purpose of inspection is refused. No inspection should be made without a warrant if the premises to be inspected cannot be" entered except by force. Emergency inspections without warrants may be made when the public good is at stake.
In the ease at bar, the Building Department inspector testified that on his first visit to the tenant’s apartment, when he realized that the tenant was not able to understand him he left his card and stated that he would come back another time. On his *112 second visit to the respondent tenant’s apartment, the tenant indicated that her son would translate for them and it was during his conversation with the tenant through her son, who is 20 years of age, that it was learned that the apartment was occupied by the tenant and seven infant children. The measurements were then taken as hereinabove indicated, and the violation was placed upon the premises.
In Sackler v. Sackler (15 N Y 2d 40) the Court of Appeals differentiated between evidence obtained as a result of an illegal and forcible intrusion by an individual and illegal evidence obtained by agents of a “ government.” Quoting therein (p. 43) the holding in Burdeau v. McDowell (256 U. S. 465) the court held that the Fourth Amendment was intended to be a restraint upon the activities of sovereign authority and was not intended to be a limitation upon others. Later cases, such as Matter of Finns Liq. Shop v. State Liq. Auth. (24 N Y 2d 647) indicate quite clearly that under the law as it now exists in this State, evidence obtained by any governmental authority which violates the Fourth and Fourteenth Amendments of the Constitution of the United States would not be admissible in evidence in any prosecution, whether it be administrative or criminal in nature.
There is no claim of forcible entry raised here. The claim, rather, is that the tenant who did not understand English did not and could not knowingly consent to the inspection and that by reason of her inability to fully understand and comprehend the nature and the possible outcome of such inspection, the information elicited from her and through the inspection is not admissible in evidence.
Let us first examine the nature of the information sought in this inspection. There was no search here for contraband or incriminating evidence. The inspection was merely to determine the cubic foot content of the apartment occupied by the tenant. Such cubic foot content could or should have been available from filed plans or the building’s certificate of occupancy. Such cubic foot content was immutable and its verification can in no way be viewed as incriminating. The information that the apartment was occupied by herself and seven infant children in and of itself can hardly be said to be self incriminating, or such information that would subject the tenant to a penalty — criminal or otherwise. The tenant’s occupancy of the apartment by herself and her seven children was open and notorious and such information could have been obtained from other sources. In what way then was the Fourth, *113 or Fourteenth, Amendment breached? As hereinabove stated it must be conceded that each municipality has the right to enforce and carry out its health, fire and housing programs by means of regular inspections or specific inspections to ascertain whether hazardous conditions exist (Matter of Camara v. Municipal Ct. and See v. City of Seattle, supra). To follow the argument of the tenant’s attorney to its logical conclusion, would lead one to require a Miranda (384 U. S. 436) warning to be given each time an inspection was about to be made. I cannot in good conscience believe that it was the intent of the Supreme Court of the United States to so hamper city inspectors in the carrying out of their duties.
I have, therefore, reached the conclusion that the consent given by the tenant in this proceeding was sufficiently knowing, in view of the information sought, to distinguish it from the cases which hold that such inspections under certain circumstances require the issuance of a warrant (Camara v. Municipal Ct., supra) and which hold that any information obtained without such a warrant is inadmissible (see Matter of Finn’s Liq. Shop v. State Liq. Auth., 24 N Y 2d 647, supra).
The inspector’s conduct was not unreasonable and in no way abridged or violated the tenant’s constitutional rights under the Fourth, or Fourteenth Amendments to the Constitution of the United States.
In connection with the motion to dismiss on the ground that the violation upon which the holdover proceeding was based was illegally and improperly placed upon the premises due to the failure of the Department of Rent and Housing Maintenance to establish that overcrowding existed in the subject premises under the applicable regulations, I am of the opinion that the motion must be granted and the proceeding dismissed. The evidence clearly establishes, that although the apartment was listed as a four-room apartment, the inspector actually measured the cubic foot content of only three rooms. He alleges that the measurement of the fourth room was not made because the door appeared to be locked and access to it was not readily available. Under these circumstances, it is clear — -to me at least — that the overcrowding violation, based as it is upon the measurement of only three of the four rooms occupied by the tenant, was improperly placed upon the premises by the Department of Rent and Housing Maintenance and is invalid. As the holdover petition herein is founded upon the violation and as such violation was improperly placed upon the premises, it is my opinion, as heretofore stated, that the proceeding must fall.